E-FILED
Tuesday, 08 April, 2008  03:42:06 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MARTIN VICTOR KIESEWETTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-1299 |
| | ) | |
| CATERPILLAR INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Caterpillar Inc.'s Motion for Summary Judgment against Plaintiff Martin Victor Kiesewetter pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, the Motion for Summary Judgment [#9] is GRANTED.

### JURISDICTION

The Court has original jurisdiction over the case pursuant to 28 U.S.C. § 1331 because the claims asserted in the Complaint arise under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq.

### BACKGROUND

Caterpillar Inc. hired Martin Kiesewetter in 1980 as part of a rotational engineering training program.[1]  Kiesewetter's career progressed with increasing responsibility and with no adverse actions against Kiesewetter until 2002.  Sometime in

---

[1] Although neither party identified this as a material fact, it is relevant background information and can be found in Kiesewetter's deposition at 27-28.

2002, Kiesewetter transferred to the Original Equipment Manufacturer Solutions department in Peoria, Illinois.  He reported to Bill Hillman, then Larry Riekert, and finally Glen Dyer.   While reporting to Riekert, Kiesewetter was counseled multiple times regarding his job performance, suspended twice, received an unsatisfactory performance evaluation, and was placed on an employee action plan.   Kiesewetter transferred to the Specialty Business Products Unit (SBPU) in September 2004 and reported to Wayne Klopfenstein after December 2004.   While working in the SBPU, Kiesewetter served as a "Green Belt" on various 6-Sigma teams.[2]   On February 7, 2005, Klopfenstein's performance review rated Kiesewetter as meeting expectations.   On May 26, 2005, another performance review by Klopfenstein rated Kiesewetter as meeting expectations.   The May 26 performance review was required for Kiesewetter to attend 6-Sigma "Black Belt" training.

Kiesewetter attended "Black Belt" training from June 13 to June 17, 2005.  On June 16, 6-Sigma Trainer Ken Walker emailed Klopfenstein stating that Kiesewetter's "behavior in class has been less than acceptable."  (Klopfenstein Decl. ¶ 3).  The email also stated that Kiesewetter was late to class, was late returning from breaks, and left class in the middle of exercises.  The email also stated that Kiesewetter asked "too many questions that have an obvious axe to grind," and that he was "very command and control in the team exercises" and prevented other trainees from participating fully. (*Id.*)  In addition to the email, Walker told Klopfenstein that Kiesewetter physically removed a marker from a teammate's hand, flipped a sheet over that the team had been working on, and wrote his own ideas and solutions on a clean sheet.  Steve

---

[2] 6-Sigma is a methodology used to improve or create processes.  "Green Belt," "Black Belt," and "Master Black Belt" are different levels of 6-Sigma training.

Dowdell, another 6-Sigma trainer, told Klopfenstein that Kiesewetter "talked down to the class, asked abrasive questions, talked while the instructor was talking, dominated team projects, intimidate[d] his teammates, and left class during training sessions and then returned to ask questions about what was covered." (*Id.* at ¶ 4.)   On June 17, Klopfenstein met with Kiesewetter to discuss his behavior during the training, and Kiesewetter was loud and angry during that meeting.   After the meeting, Kiesewetter confronted 6-Sigma team members Kevin D'Sa and Chris Arrick and pointed his finger at them while speaking loudly to them.   Later, Kiesewetter interrupted a meeting between Klopfenstein and Scott Kordonowy and loudly stated that "it was not D'Sa or Arrick that had a problem with him, and whoever it was should have come directly to him." (*Id.* at ¶ 6.)  After that confrontation with Klopfenstein, Kiesewetter voluntarily left the office for the day.

Later during the evening of June 17, Steve Davis phoned Kiesewetter to notify him that he was suspended with pay pending an investigation into his behavior at work. That investigation revealed the incidents during the week of training discussed above. On June 28, Caterpillar terminated Kiesewetter's employment for violation of company policy.  Stan Zwick, the SPBU department head, made the termination decision after finding that Kiesewetter's inappropriate conduct violated the workplace violence and code of conduct policies.

On September 23, 2005, Kiesewetter filed an EEOC charge alleging that Caterpillar discriminated against him on the basis of his bipolar disorder, an alleged disability, when it terminated him.  Kiesewetter was diagnosed with bipolar disorder in

April 2000, and at least some Caterpillar managers were aware of his bipolar disorder. The EEOC issued a Right to Sue letter on August 17, 2006.

Kiesewetter timely filed this action pursuant to the ADA, alleging that Caterpillar terminated him because of his bipolar disorder.  Caterpillar moved for Summary Judgment contending that (1) Kiesewetter is unable to establish a prima facie case of discrimination; (2) Caterpillar's reasons for terminating Kiesewetter were not pretextual; and (3) Kiesewetter is unable to recover punitive damages.  This motion now is fully briefed, and this Order follows.

## STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party must demonstrate, through portions of the record or affidavits, the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  Any doubt about the existence of a genuine issue for trial is resolved against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then must present specific facts demonstrating a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986).  Rule 56(e) requires the non-moving party to go beyond the pleadings and make specific factual allegations demonstrating a genuine issue for trial.  *Celotex*, 477 U.S. at 324, 106 S. Ct.

2548; *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). The non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 395 (7th Cir. 1999); *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995). Nevertheless, the Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland*, 883 F.2d at 1312. The Court must deny summary judgment if a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

The ADA prohibits covered employers from discriminating against "a qualified individual with a disability because of the disability of such individual" with regard to hiring, advancement, and discharge. 42 U.S.C. § 12112(a). Like other disparate treatment employment discrimination claims, a plaintiff may prove discrimination using either the direct method or indirect, burden-shifting method of proof. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006). Kiesewetter does not argue that he may proceed under the direct method, and the Court finds no evidence in the record that would allow him to proceed under the direct method. Therefore, the Court will analyze his claim under only the indirect method. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

To establish a prima facie case under the indirect method, the plaintiff must establish that (1) he is a qualified individual with a disability; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse

employment action; and (4) similarly-situated employees received more favorable treatment.  *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2005).  If Kiesewetter fails to establish any of these elements, his claim fails.  *Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001).  If he establishes all four elements, however, the burden shifts to Caterpillar to "articulate a legitimate, nondiscriminatory reason for the defendant's employment action."  *Id.*  If the employer meets this burden, then the plaintiff bears the burden of showing that the employer's proffered reason is pretextual.  *Id.*

Caterpillar argues that Kiesewetter fails to establish three of the four elements of a prima facie case.  Caterpillar concedes, and the Court agrees, that Kiesewetter suffered an adverse employment action when he was suspended and terminated.

A.    Qualified Individual with a Disability

To recover under the ADA, Kiesewetter must demonstrate that he was a qualified individual with a disability when Caterpillar terminated him.  *Hoeller v. Eaton Corp.*, 149 F.3d 621, 624 (7th Cir. 1998).  This showing requires Kiesewetter to demonstrate (1) that he was qualified; and (2) that he had a disability.  *Id.*

There is no dispute regarding Kiesewetter's qualifications for the position he held. To demonstrate that he is qualified for the position, Kiesewetter must show (1) that he possessed the proper training, skills, and experience for the position; and (2) that he could perform the essential functions of the job, either with or without reasonable accommodation.  *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284 (7th Cir. 1996).  As of his termination, Kiesewetter had held the position for over eleven months and received two performance evaluations indicating he was meeting expectations.

Caterpillar presents no evidence suggesting that Kiesewetter lacked training, skills, or experience for the position, or that he could not perform the essential functions of the job.

The ADA defines disability as any one of the following:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such impairment."

42 U.S.C. § 12102(2); *Hoeller*, 149 F.3d at 624-25. "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Kiesewetter was diagnosed with bipolar disorder in April 2000. Bipolar disorder, a medical condition, undoubtedly is a mental impairment. *See Hoeller*, 149 F.3d at 625. However, the "existence of a medical condition does not satisfy the ADA's disability standard." *Burnett v. LFW Inc.*, 472 F.3d 471, 483 (7th Cir. 2006); see also 29 C.F.R. pt. 1630 app. ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). Kiesewetter must also demonstrate that his impairment substantially limited a major life activity. "Substantially limited" means that the person is "[u]nable to perform a major life activity that the average person . . . can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average

person . . . can perform" that same activity.  29 C.F.R. § 1630.2(j)(1).  The Court may consider the nature and severity of, the duration of, and the permanent or long-term impact resulting from the impairment.  29 C.F.R. § 1630.2(j)(2).

In *Hoeller v. Eaton Corp.*, 149 F.3d 621 (7th Cir. 1998), the Seventh Circuit addressed the showing that a plaintiff must make to show a substantial limitation of a major life activity.  In *Hoeller*, the plaintiff, who suffered from bipolar disorder, argued that he was substantially limited in the major life activity of working, "thought processes," and "communications skills and interpersonal relationships."  *Id.* at 625.  The Court did not analyze the activity of working, accepting the district court's rejection of that argument, and rejected the argument regarding interpersonal relationships as part of working.  *Id.* (rejecting "thought processes" argument as first raised on appeal and related to working).

Even giving Kiesewetter the benefit of all reasonable inferences, he fails to make the required showing of disability.  Kiesewetter's bipolar disorder manifests itself in two states of emotion, depression and mania.  He had not suffered from a depressed state for two years and had suffered six manic episodes since April 2000.  He contends that he suffered a manic episode during the week leading up to his suspension and termination.  However, Kiesewetter testified that he was able to care for himself, walk, drive a car and work during both depressed and manic episodes and at all times relevant to his Complaint.  He does not argue that his bipolar disorder, even during the excited states, substantially limited the life activity of working or any major life activity. Kiesewetter states that he was hospitalized for his bipolar disorder in April 2000 and July 2001, but he does not state the length of these hospitalizations or argue that they

had a substantial limitation on his ability to work.  Accordingly, Kiesewetter fails to demonstrate that his bipolar disorder was severe enough to limit a major life activity or to constitute a long-term or permanent impact on a major life activity.

Kiesewetter's Response argues that the Court should determine disabilities after making an individualized inquiry.  *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566, 119 S. Ct. 2162 (1999); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S. Ct. 2139 (1999); *Bragdon v. Abbott*, 524 U.S. 624, 641-42, 118 S. Ct. 2196 (1998). However, Kiesewetter does not detail how he is disabled under the ADA definition aside from the general allegation that he suffered from a manic episode during the week leading to his suspension and termination.  Kiesewetter does not provide any evidence that his bipolar disorder substantially limited a major life activity, and the Court's review of the record also reveals none.  Similarly, Kiesewetter presents no evidence that he had a record of a substantially-limiting impairment.  Although Kiesewetter presents evidence that Caterpillar knew of his bipolar disorder, he does not demonstrate that Caterpillar regarded that condition as substantially limiting a major life activity.

Because Kiesewetter cannot demonstrate that his bipolar disorder was a disability under the ADA definition, he cannot establish a prima facie case of discrimination.

B.    Meeting Legitimate Employment Expectations

Caterpillar contends that Kiesewetter was terminated for inappropriate behavior during the week of 6-Sigma training.  Because of that inappropriate behavior, Caterpillar argues that Kiesewetter was not meeting legitimate performance expectations. Kiesewetter, however, argues that the behavior exhibited during that week resulted from

his bipolar disorder rather than a pattern of performance deficiencies. Additionally, Kiesewetter's recent performance evaluations indicated he was meeting expectations.

Acting in a manner contrary to an employer's established code of conduct probably does not meet the employer's legitimate performance expectations. However, if the Court found that Kiesewetter was disabled under the ADA definition, there would be a genuine issue of material fact about whether Kiesewetter's behavior resulted from the bipolar disorder or was a pattern of performance deficiencies. Accordingly, Kiesewetter has not failed to establish this element of the prima facie case.

C.    Similarly-Situated Employees

Caterpillar argues that Kiesewetter is unable to establish the final element of the prima facie case because no similarly-situated employees not in the protected class were treated more favorably.

A similarly-situated employee is an employee "who is directly comparable . . . in all material respects." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (*quoting Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). Kiesewetter can establish a similarly-situated employee by showing that "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (*quoting Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)).

Kiesewetter presents two employees whom he claims are similarly-situated and were treated differently. Although these allegations are unsupported by the record before the Court, the Court addresses each of the allegations. *See Oest v. Illinois Dep't*

- 10 -

*of Corr.*, 240 F.3d 605, 614 (7th Cir. 2001) ("uncorroborated, conclusory statements that similarly situated co-workers were treated differently" are insufficient to overcome summary judgment).

Kiesewetter first argues that his former manager, Larry Riekert, was "fired in the past and re-hired" following a fist fight on Caterpillar property. Kiesewetter provides an exhibit purporting to support this allegation, but the exhibit does not reference a fist fight as the reason for Riekert's termination or give any indication that Riekert was terminated for behavior similar to that exhibited by Kiesewetter. Additionally, there is no evidence before the Court suggesting that Riekert and Kiesewetter reported to the same supervisor or were held to the same standards of conduct. On this record, the Court cannot find that Riekert was similarly situated to Kiesewetter.

Kiesewetter also argues that Wayne Klopfenstein's notes contained an anecdotal comparison of Kiesewetter's behavior during a meeting with the behavior of one of Klopfenstein's former supervisors who once acted angrily in a meeting. Although Kiesewetter could argue that the former supervisor's behavior was similar to the behavior exhibited by him, there is no indication that the supervisor was otherwise similarly situated to Kiesewetter. Because there is little detail regarding the supervisor in Klopfenstein's notes, the Court is uncertain about when this incident occurred or whether this person was even a Caterpillar employee. On this record, the Court cannot find that Klopfenstein's supervisor was similarly situated to Kiesewetter.

Kiesewetter fails to produce any credible evidence that a similarly-situated employee was treated more favorably than him. Accordingly, Kiesewetter fails to establish the final element of a prima facie case.

In *Timmons v. General Motors Corp.*, 469 F.3d 1122 (7th Cir. 2006), the Seventh Circuit seems to suggest that the fourth element of the prima facie case does not require a showing of a similarly-situated employee receiving more favorable treatment, but rather the plaintiff must show that the employer took an adverse employment action because of the disability. *Id.* at 1127. This recharacterized element creates an overlap with the pretext analysis. *Id.* at 1129. However, in this case, this recharacterized element is inapplicable because Kiesewetter is not disabled under the ADA definition and therefore could not have been suspended and terminated because of his disability.

Because Kiesewetter fails to establish that he was disabled under the ADA definition or that he was treated differently from similarly-situated employees, he has not established a prima facie case of discrimination. Therefore, Caterpillar is entitled to summary judgment in its favor.

D.    Pretext

Caterpillar argues that its reason for terminating Kiesewetter, Kiesewetter's violation of Caterpillar's workplace violence and code of conduct policies, was not pretext for disability discrimination. Because the Court found that Kiesewetter did not establish a prima facie case, it need not analyze pretext. However, the Court will comment on Kiesewetter's repeated assertion that he did not threaten or cause physical harm to anyone. Because he did not threaten or cause physical harm, Kiesewetter argues that Caterpillar's real reason for terminating him was because of his bipolar disorder rather than a violation of Caterpillar's code of conduct or workplace violence policies.

This Court does not "sit as a super personnel department to review an employer's business decision." *Ritter*, 231 F.3d at 1044; *Ranson v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 342 (7th Cir. 1999).   A plaintiff must show more than "a bad or mistaken business decision" by showing that the employer did not honestly believe the basis for its decision. *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 548 (7th Cir. 1997).  A plaintiff ultimately must prove that the termination was motivated by intentionally discriminatory retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742 (1993).

There is no evidence from which a reasonable jury could conclude that Caterpillar terminated Kiesewetter for anything other than the behavior he exhibited during the week of 6-Sigma training.  Unfortunately, we no longer live in a world where an employer can ignore reports of hostile behavior and potential violence in the workplace.  Similarly, as long as an employer acts in good faith, it is not good public policy to require an employer to wait until it has concrete proof of an employee's hostile aggressions before taking disciplinary action.   In the absence of any evidence calling into doubt the sincerity of Caterpillar's beliefs, this Court will not second guess Caterpillar's decision to terminate Kiesewetter's employment.

E.    Punitive Damages

Finally, Caterpillar argues, and Kiesewetter concedes, that punitive damages are not requested in this case.  The Court does not reach the issue of damages because Kiesewetter cannot establish a prima facie case of discrimination.

## CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment [#9] is GRANTED.  This case is terminated.


ENTERED this 8th day of April, 2008.


/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge